FILED
3/12/26 4:19 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| IN RE: | . | Chapter 13 |
| Angelica Sue Botti, | . | |
| Debtor. | . | Bankruptcy #21-21934 (CMB) |

................................................................

**U.S. Steel Tower, 54th Floor**
**600 Grant Street**
**Pittsburgh, PA 15219**
**November 8, 2022**
**10:48 a.m.**

**TRANSCRIPT OF:**

**#119   JOINT MOTION TO APPROVE SETTLEMENT AGREEMENT**

**BEFORE THE HONORABLE CARLOTA M. BÖHM**
**UNITED STATES BANKRUPTCY JUDGE**

**APPEARANCES:**

| | |
|---|---|
| For The Debtor: | Michael C. Mazack, Esq.<br>Brenlove & Fuller, LLC<br>401 Washington Ave.<br>Bridgeville, PA 15017 |
| For The Chapter 13 Trustee: | Katherine M. DeSimone, Esq.<br>Office of the Chapter 13 Trustee<br>USX Tower-Ste. 3250<br>600 Grant Street<br>Pittsburgh, PA 15219 |
| For Donald L. Lampus, Jr.: | John R. O'Keefe, Jr.,<br>Metz Lewis Brodman Must<br>& O'Keefe, LLC<br>535 Smithfield street-Ste. 800<br>Pittsburgh, PA 15222 |
| ECRO: | Connie Ulysse |

2

Transcribing Firm:          Writer's Cramp, Inc.
                            1027 Betty Lane
                            Ewing, NJ 08628
                            609-588-8043

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

3

THE COURT:  Next matter is Angelica Sue Botti, Bankruptcy #21-21934.  This is a Joint Motion to Approve Settlement Agreement.

THE CLERK:  Kate DeSimone.

MS. DESIMONE:  Kate DeSimone for the Chapter 13 Trustee.

THE CLERK:  Michael Mazack.

MR. MAZACK:  Good morning, Your Honor.  Michael Mazack for the Debtor.

THE CLERK:  John O'Keefe.

MR. O'KEEFE:  Good morning, Your Honor.  John O'Keefe on behalf of Mr. Lampus, Donald Lampus.

THE CLERK:  And Judge, just as a note, the Debtor, Angelica Sue Botti, is on the Zoom hearing.

THE COURT:  Thank you.  All right, Mr. Mazack, you can present your motion.  One of my first questions to you is service.  When I look at service -- at your motion, it says joint motion.  There's a Certificate of Service attached at the end of the motion and then there's an -- the Agreement which has to be included, of course.  Was this Agreement mailed out to the matrix with the motion?

MR. MAZACK:  Yes, Your Honor, a copy of the motion and the Agreement were provided to all the Creditors that appeared on the matrix, everyone who filed a Proof of Claim, and everyone that was scheduled by the Debtor.

4

THE COURT:  All right, thank you.  That solves that issue.  All right, proceed with your motion.

MR. MAZACK:  Thank you, Your Honor.  This is our second Motion to Approve Settlement.  Per the Court's instructions, we refiled this with a clean copy of the Settlement Agreement and did serve all of the Creditors so that they could all take a look at the Agreement and sort of get the details of the terms of the settlement.  We did not get any response from any Creditors on this, but the Trustee did file a Response to it where they raised a few different claims or concerns, I guess, about the motion that I'd like to address for the Court.  The first of those was the Trustee did say that they were concerned that there was no consideration in this for the Debtor, that she'd essentially be paying $10,000 and transferring her interest in Gemini, the main asset of the bankruptcy, over to Mr. Lampus.  But I would point out to the Court that in exchange for that, pursuant to §3 of the Settlement Agreement, Mr. Lampus is going to be marking a Proof of Claim that he has for approximately $100,000 as paid in full.  He is going to be withdrawing the other claim that he's filed, which is a contingent unliquidated claim at this point, relative to the adversary action that's out there, and Mr. Lampus is also agreeing to take full responsibility for the SSB debt, which is approximately $350,000.  That debt was reduced to judgment

5

already and the Debtor is a guarantor on that, so she would be personally responsible for that.  So in exchange for the transfer of the business assets and the payment of that money, Mr. Lampus will be essentially taking responsibility for all of those debts away from the Debtor.  They were also asking about the Debtor's wherewithal to meet the monthly payments on this, and the Trustee does point out that there were several defaults under the Plan payments.  I think we've addressed that at previous hearings with the Court and informed you that the Debtor was actually making those payments directly to the Creditor.  Since the last hearing, which was approximately a month ago, the Debtor has also made approximately $800 in payments towards Plan arrears, and I think she just submitted another $350 that may not have shown up yet, but that may have been submitted in the last day or two.

     With regard to the Trustee's concerns about, you know, misrepresentations on the schedules, you know, how is the Debtor going to be financially available to do this, she is going to be getting some contributions from family members. The income that is reported on the schedules is essentially the same; that hasn't changed.  But she does have a few family members that she is going to be relying on to help give her a little bit of the money that she needs to make the payment that is going to be due under this Settlement Agreement.

     And I think the last issue that the Trustee may have

6

raised was the effect that this would have on Undersecured Creditors.  We've listed only five Creditors in the schedules. I know several other Creditors have come forward since then and filed Proofs of Claim, but the main Unsecured Creditor in this case being a gentleman by the name of John Botti, which is a relative of the Debtor's.  All the other claims are relatively small, unsecured debt, $1,000 or less.  This Agreement deal with the two by far largest claims that exist in this case, that being the hundred-plus thousand dollars that's due to Lampus, and also the $350,000 that's due to SSB. I think if you look at the Martin factors as well, I do think that they all tend to indicate that approving this Settlement Agreement would be appropriate.  There's a lot of litigation involved in this case.  We have the adversary action with Lampus.  We have Lampus' objection to our bankruptcy schedules.  We have objections to Lampus' Proof of Claim. We'll most likely, if this continues, be filing another Objection to the open-end Proof of Claim that they have, and we do think that there may be some potential litigation on the issue of the guaranty with SSB.  We're looking at all of that litigation.  We know that if there is a chance of the Debtor succeeding on any of that, it's going to be an extremely long and drawn-out process, and we're really sort of hoping that this settlement will get everything to a point where she'll be close enough to getting it all wrapped up.  I think Lampus is

going to be withdrawing all of those things.  The Judgment from SSB will be going away.  So essentially this will be giving her that clean break and that fresh start that she'd be looking for coming out of the bankruptcy.  I think if you look also at the complexity of the litigation, this was a State Court action that had been around for several months before the bankruptcy was filed.  Since that time it's been removed over to Federal Court and it's the adversary action that exists, but we haven't really done much with that since the bankruptcy was filed.  You know, we focused primarily with Lampus on trying to get some sort of a settlement together that we thought would make sense rather than spending time and effort advancing that litigation.  But I do believe that if we're stuck going through that, we are going to be spending a significant amount of time and a significant amount of money trying to prove her case.  We know depositions would be in order, things like that.  We do think that it would be a pretty long road before we're at a point where we'd have any resolution to that adversary.  And just looking at the merits, I'm not confident that we'd be successful on those.  I think the interest of the Creditors as well, you know, like I pointed out to the Court, there are not many Unsecured Creditors here, none of which have objected to this at all, even though they've been provided with the motion and a full copy of the Settlement Agreement.  The two main Creditors, as

8

I had also said, being the ones that will be taken care of by this.  For all these reasons we think it's appropriate to approve this settlement Agreement and we do believe that it's in the best interest of both the Debtor and the bankruptcy estate.

THE COURT:  All right.  We're going to go to Ms. DeSimone in a minute, but I have a few questions I'd like answered.

MR. MAZACK:  Sure.

THE COURT:  First of all, as to the SSB debt, is -- did Mr. Lampus guarantee that debt also?

MR. MAZACK:  I do not believe Mr. Lampus was a guarantor on that, Your Honor --

MRS. BOTTI:  Yes, yes he was.

MR. MAZACK:  Oh, my apologies.

MRS. BOTTI:  I apologize, Your Honor.  Yes, he was.

THE COURT:  So he's not getting anything there. Let's go to the next one.  You had discussed earlier that maybe after the settlement the Debtor would move for dismissal of this case.  I don't know how that can even be considered when the settlement deals with payments being made before certain terms kick in and it will take probably 11 to 12 months.  So --

MR. MAZACK:  That is correct.  It looks like the final payment on this would be due 12 months from the date

9

that it's signed, Your Honor.

THE COURT:  So it's unlikely that you're going to file a Motion to Dismiss, because how can you -- the Agreement being out there and having not been completed in its terms, and you dismissing this bankruptcy?

MR. MAZACK:  I understand, Your Honor.  Our suggestion would be to dismiss but allow the Court to remain jurisdiction over this so that we could reopen and examine any issues of default.  But if the Court would prefer to keep the case open for the pendency of the Agreement, we see no issue with that, I suppose.  I do agree that, you know, there are a few steps that still need to be taken before this Agreement is going to be final, and several payments that need to be made by the Debtor, and we do want to make sure that those are done so that this can be finalized.

THE COURT:  I'm also concerned about payments by this Debtor, considering the lack of payments in the past.  So -- in her income.  So I am concerned about that and I'm going to ask Ms. DeSimone to address that.  I understand Mr. Lampus is withdrawing his claims and he's assuming debt, but it sounds like it's debt that he still -- he may owe himself.  Is there a liquor license involved here?

MR. MAZACK:  There is, Your Honor.

THE COURT:  And whose name is that liquor license on?

10

MR. MAZACK:  That is with Gemini Beverage.

THE COURT:  All right.  And what is the Debtor's -- what's been their position with -- that her ownership interest here?  Why -- the basic interest, what was their obligation?

MR. MAZACK:  Well, Your Honor, I think the adversary action was a result of a pledge Agreement that the Debtor had given to Mr. Lampus that essentially said that if there were any defaults under the loan documents, that her 90% ownership interest in the property would go back to Mr. Lampus and that she would no longer have any control of the company.  Lampus' position obviously being that that devolvement occurred pre-petition, that again being the basis of the civil litigation, the action that's been removed over to here.  The Debtor, when we originally filed, had not had control or operation of the business for several months, so we did estimate significantly higher, I think, than the actual value in our schedules of what we thought her interest in Gemini Beverage was worth. We've seen some financial statements from Mr. Lampus since that point and we do believe, looking at the way things have operated over the last year or so, that the actual value of the business is significantly less than we had originally stated, so again, that being another reason while felt that this settlement was in the best interests of everyone involved.

THE COURT:  All right.  Ms. DeSimone, I think he's

11

addressed your points, but let me ask you, are you satisfied at this point, or not?  I want to hear from the Trustee if they feel this is -- this should be approved.

MS. DESIMONE:  Your Honor, the Trustee has some very, very fundamental problems with this settlement, problems that are, you know, certainly not uncommon.  But Mr. Mazack alluded to the fact that there have been no objections by Unsecured Creditors, but it's the Trustee's job to look out for all Creditors --

UNIDENTIFIED SPEAKER:  Correct.

MS. DESIMONE:  -- and Unsecured Creditors do make up 99% of this case.  We're also concerned about the fact that the Debtor's schedules indicate that she has a negative net income.  She has a very, very nominal plan payment of $350 a month and has struggled to even make that nominal Plan payment.  You know, under these circumstances, we have some very serious concerns as to the overall feasibility of the case and as to whether the settlement is in fact going to benefit the other unsecureds.

MR. O'KEEFE:  Your Honor, may I speak?

THE COURT:  Yes, Mr. O'Keefe.

MR. O'KEEFE:  On the issue of the litigation, this was not a pledge but an assignment and there is a difference.  It was assigned as if it were a conveyance so that upon default, if any, in the indebtedness to SSB, the ownership was

12

to transfer to Mr. Lampus.  That occurred in March of 2021 and in April of 2021, having failed to cure within 30 days in accordance with the assignment, which is like a deed in lieu in this circumstance, she was required to transfer the title and did not.  We filed a Complaint in May of '21.  It was actually scheduled for argument on a Motion for Summary Judgment when this case was filed, and we filed in order to forestall the ultimate outcome of that case.  On the issue of consideration, I know the Court has observed that Mr. Lampus is a guarantor, but the benefit to Ms. Botti and to her estate is not the fact that he is otherwise obligated, but that he is actually getting her released from the guaranty obligation and we believe that that has substantial value.  It essentially wipes out her co-obligor status for a loan that started at 400,000, and because of Mr. Lampus has been paid down (indiscern.).  With respect to the Unsecured Creditors, they are in a far better position than they would be otherwise, notwithstanding the poor fiscal circumstances of Ms. Botti, because as Mr. Mazack pointed out, we're not only wiping out an obligation in the range of 350 to 400 thousand dollars, but also the obligations which we're were separately and independently due to Mr. Lampus, albeit subject to some dispute, we don't believe good faith.  But those probably are also in excess of another $100,000.  And when you consider the Martin factors, it may not have been a great case to begin

with, but it's a whole heck of a lot better, and by that I mean 90 to 95, maybe 99 percent better than where it started in this Court.  Mr. Mazack also pointed out that while there are some unsecured claims, there -- the claims that were scheduled are, I believe, less than $1,000, other than a restitution order that Ms. Botti owes and would otherwise have to pay anyway.  This was negotiated hard and long and the consideration is simply to recoop some burden which this would otherwise probably cost an incredible amount of attorneys' fees, costs, and Court time and witness time if it were to be litigated on any number of the existing matters and some potential other matters to which Mr. Mazack referred.  So all those things taken into consideration, I believe that it is a worthwhile and positive settlement, not only for my client who doesn't want to spend any more money on this, but also for the benefit of Ms. Botti's Creditors and the Court.

THE COURT:  All right.  Anything else from anyone?

MR. MAZACK:  And Your Honor, if I could just very briefly address Ms. DeSimone's issues regarding the Plan payments.  We know that issue has come up of Plan arrears several times throughout this case, and the Debtor has been available on each of those hearings to confirm to the Court that she's actually been making those payments to the Creditor.  At no point since this bankruptcy was filed has there been an actual arrears balance due on that obligation;

14

she's just been paying it directly rather than paying it, you know, to the Trustee to be paid out of the Plan.  She does understand that that's not the way that things need to continue, and as I indicated to the Court, she's paid approximately $1,200, 1,150 I think, since the last hearing was scheduled less than a month ago, to try and clear up some of the Plan arrears that are out there.  And we do believe that if the bankruptcy does remain open, that she would have the ability to continue making those Plan payments until the Settlement Agreement is finalized and the case is actually ripe for closing.

THE COURT:  Is this claim by John Botti a -- on a restitution, nondischargeable here?

MR. O'KEEFE:  Are you talking about Mr. Lampus' claim?

THE COURT:  No, Mr. Botti.  He indicated that there was -- it's an unsecured claim by a John Botti.

MR. O'KEEFE:  Okay, I'm sorry.

THE COURT:  John Botti.  Is that what you said?

MR. MAZACK:  If that's a restitution claim, Your Honor, then yes that would be a nondischargeable claim, I believe.

THE COURT:  Oh.  I guess it's not that relevant. All right, I believe that under the Martin factors you have met your burden.  I think the probability of the litigation

15

succeeding, the likelihood of collection, the complexity of the litigation and the terms are terms that are acceptable to the Court.  I think Mr. O'Keefe has clearly indicated why it's benefit to the Botti estate to settle, and of course to Mr. Lampus.  Therefore the Court will approve the settlement.  I don't see this case necessarily being dismissed, Mr. Mazack, but you proceed whatever way you need to do.  I will enter the order.

MR. MAZACK:  All right, thank you, Your Honor.

THE COURT:  Thank you.  Thank you, everyone.

MS. DESIMONE:  Thank you, Your Honor.

(Court adjourned)


CERTIFICATION

I, Lewis Parham, certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.


_Lewis Parham_                          3/12/26

_____          _____
Signature of Transcriber                   Date