**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re: | ) | Bankruptcy No. 21-21934-CMB |
| | ) | |
| ANGELICA SUE BOTTI, | ) | Chapter 13 |
| | ) | |
| Debtor. | ) | Related to Doc. Nos. 146, 155, 156, |
| | ) | 159, and 180 |
| | ) | |
| | ) | |
| ANGELICA SUE BOTTI, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DONALD L. LAMPUS, JR., | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

**<u>MEMORANDUM OPINION</u>**

Three years after the Court approved a settlement jointly presented by the above-captioned

Debtor, Angelica Sue Botti ("Botti"), and her former business associate, and nearly three years

after the Court dismissed the case due to her request, Botti, *pro se*, filed this within Motion seeking

to reopen her case to obtain relief from two orders, the Court's Order Approving Settlement (Doc.

No. 126) and the Order Dismissing Case (Doc. No. 134).[1] Upon consideration of the Motion, the

Response in Opposition filed by Donald L. Lampus, Jr. ("Lampus"), and the records developed at

---

[1] Pursuant to 28 U.S.C. §§157 and 1334, this Court has subject matter jurisdiction. Further, this is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A). Although procedurally a court will resolve a motion to reopen first, without the need to resolve the merits of the underlying relief sought, as explained herein the ability to vacate the Court's Orders is discussed in the context of whether it is futile to reopen this case.

the initial hearing held on May 20, 2026 and the evidentiary hearing held on June 17, 2026, the Court finds that the Motion must be denied.[2]

During the course of her bankruptcy case while represented by counsel, Botti entered into a settlement agreement with Lampus to resolve litigation surrounding the alleged defaults on a debt that she co-guaranteed with him for their business entity, Gemini Beverage LLC ("Gemini Beverage"), a beer distributor, and a debt that she guaranteed on behalf of Gemini Beverage for working capital provided by Lampus. *See* Settlement Agreement and Mutual Release (Doc. No. 119). The settlement agreement involved Botti transferring her interest in the entity completely to Lampus, removing any association with Gemini Beverage, and making certain payments pursuant to the settlement agreement. *See id*.

This Court approved the settlement on November 8, 2022, after the parties presented their Joint Motion to Approve Settlement Agreement. *See* Order granting Motion to Approve Settlement (Doc. No. 126). Botti personally requested that her bankruptcy case be dismissed after the settlement agreement was entered. *See* Status Report (Doc. No. 130). It was dismissed without prejudice on February 23, 2023, and it was subsequently closed on August 11, 2023.

And now, Botti is seeking through a motion to reopen her case to overturn the settlement agreement that she willingly entered into and seeking to vacate the order dismissing her case after she had urged that it be dismissed. She asserts that there is newly discovered evidence which shows the settlement was based on "materially incomplete and inaccurate information," and she states that she has filed her Motion promptly after discovering this evidence. *See* Motion at ¶2 and ¶16.

---

[2] Per the request of Botti, the Court held an evidentiary hearing on June 17, 2026, during which Botti did not testify, call any witnesses to testify, or present any exhibits. The Court, nonetheless, reviewed exhibits Botti had submitted prior to the evidentiary hearing to the Court. The Court finds that these exhibits have no impact on the outcome of its decision.

Under 11 U.S.C. § 350(b) and Fed.R.Bankr.P. 5010, a debtor may seek to reopen her case. Section 350(b) provides that a case may be reopened to administer assets, to accord relief to the debtor, or for other cause. Reopening a closed case rests within the Court's sound discretion. *See In re Roberts*, 659 B.R. 271, 278 (Bankr. W.D. Pa. 2024) (citing *In re Lazy Days' RV Ctr., Inc.*, 724 F.3d 418, 422-23 (3d Cir. 2013)). Courts consider various factors to determine whether to reopen a closed case:

(1) the length of time the case has been closed; (2) whether the [moving] party may obtain relief in an alternative forum; (3) whether any party would be prejudiced by the reopening of the bankruptcy case; (4) any benefit that may accrue to the debtor as a result of reopening; and (5) whether, if the case was reopened, the [moving] party is entitled to any relief.

*See id*. Here, the first and third factors enumerated above weigh heavily against granting the Motion. The case has been closed for almost three years, and Lampus would be heavily prejudiced by reopening and rehashing issues that have already been resolved through their joint settlement. As to the second factor, the underlying relief sought may only be obtained in this Court, as it relates to vacating the Orders. However, in consideration of the fourth and fifth factors, there appears to be no benefit to Botti in reopening where, as discussed *infra*, the underlying relief she seeks is futile.

The fifth factor turns on the futility of reopening, requiring an assessment of whether the Court can provide the underlying relief that Botti is ultimately seeking in a reopened case or whether it would be a waste of judicial resources to reopen if such relief is unavailable. *See id*. at 280 (citing *Redmond v. Fifth Third Bank*, 624 F.3d 793, 803 (7th Cir. 2010)). As recognized in *Roberts*, there is no definitive standard applied by courts as "to the quantum of proof that a movant

3

must provide in order to overcome a claim of 'futility.'" *See Roberts*, 659 B.R. at 280. While the burden is logically less than that imposed upon the movant in the adjudication of the merits of the ultimate relief sought, the standard has been set forth in various ways. *Id*. at 280-81. As succinctly put in *Roberts*, a movant "must demonstrate that the chance of success in the underlying litigation is materially more than negligible, but need not be certain." *Id*. at 281. In some cases, the answer may be as simple as "it [being] 'clear at the outset that the debtor would not be entitled to any relief if the case were reopened.'" *Id*. (quoting *In re Antonius*, 373 B.R. 400, 405-06 (Bankr.E.D.Pa. 2007)). In this instance, the Court need not weigh in on the precise terminology to describe the standard. As discussed herein, Botti is unable to show any negligible chance of success with respect to the ultimate relief she seeks upon reopening. Rather, here, it is patently clear that she would not be entitled to any relief even if the case were reopened.

The Court begins by addressing the underlying relief sought and the applicable rules. Botti is seeking relief from the Orders under Fed.R.Bankr.P. 9024 which incorporates Fed.R.Civ.P. 60(b), and she specifically seeks to vacate these Orders under Fed.R.Civ.P. 60(b)(2), (3), and (6).[3] Fed.R.Civ.P. 60(b) provides grounds for a court to provide relief from a final order, including in relevant part: (2) newly discovered evidence that, with reasonable diligence, could not have been discovered; (3) fraud, misrepresentation, or misconduct *by an opposing party*; and (6) any other reason that justifies relief.

Further applicable is Fed.R.Civ.P. 60(c) setting a time limit for when a motion under Rule 60(b) must be filed—it "must be made within a reasonable time." Specifically, under the time limit

---

[3] Botti, in her Debtor's Brief in Support of Motion (Doc. No. 180), makes only passing mention of Fed.R.Civ.P. 60(b)(1) as an additional basis to challenge the Orders. *See* Brief at 8. She does not discuss how her "evidence" constitutes mistake or elaborate to any degree, nor does it fit the facts presented by Botti. Regardless, any challenge under Rule 60(b)(1) would be barred by the passage of time under Rule 60(c). Moreover, this challenge was not raised in the Motion, and thus, opposing counsel was not given the opportunity to respond.

pertinent to Rules 60(b)(2) and (3), the motion must be made no more than a year after the entry of the order. In this case, the Orders from which Botti seeks relief were entered in 2022 and 2023. Multiple years have elapsed before Botti moved to challenge the Orders on the basis of Rule 60(b)(2) or (3), and the time limitation of Rule 60(c) makes those challenges futile. Consequentially, under application of either Rule 60(b)(2) or (3), evaluating the fifth *Roberts* factor ultimately supports denial of the Motion. [4]

Nevertheless, for the benefit of Botti, the Court shall analyze the facts presented by her to determine whether, even in the absence of the applicable time limitation, Botti has shown that there is newly discovered evidence under Rule 60(b)(2) or fraud by Lampus under Rule 60(b)(3) sufficient to show a likelihood of success that would necessitate reopening. Botti in her Motion discusses newly discovered and previously concealed facts and "fraud on the Court" based on what was *not* presented to the Court when Botti and Lampus jointly presented their settlement for approval. *See* Motion at ¶¶17-37.

To the extent Botti now asserts that the Court did not approve the settlement with a full record, Botti seems to misunderstand the nature of the Court's settlement approval. *Id.* at ¶32. When approving a settlement, the Court simply decides whether the settlement was "fair and equitable." *See In re U Lock, Inc.*, No. 25-1177, 2025 WL 3776122, at *3 (3d Cir. Dec. 30, 2025).[5] Utilizing certain factors enumerated by the Third Circuit, the parties present information to the Court to make that determination.[6] However, the parties are not required to produce all information exchanged during negotiations in order for the Court to make this assessment.

---

[4] *See infra* for the Court's discussion on Rule 60(b)(6).

[5] The court in *In re U Lock* observed as follows: "Rather than execute a comprehensive claim clean-up, the Bankruptcy Court simply had to decide whether the settlement was 'fair and equitable[.]'" *See* 2025 WL 3776122 at *3 (quoting *In re Nutraquest, Inc.*, 434 F.3d 639, 644 (3d Cir. 2006)).

[6] There are four criteria that a bankruptcy court should consider in striking the balance between "the value of the claim that is being compromised" against the value to the estate of the acceptance of the settlement: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation

One of the key advantages of settlement is the avoidance of litigation. To approve the settlement, the Court considers the debtor's probability of success and risk in the underlying litigation, yet the Court is "not supposed to have a 'mini-trial' on the merits" to resolve the underlying claims. *See Key3media Grp., Inc. v. Pulver.Com, Inc.* (*In re Key3media Grp., Inc.*), 336 B.R. 87, 92-93 (Bankr. D. Del. 2005); *see also In re Martin*, 212 B.R. 316, 319 (8th Cir. BAP 1997) (noting that it is "not necessary for a bankruptcy court to conclusively determine claims subject to a compromise, nor must the court have all of the information necessary to resolve the factual dispute, for by so doing, there would be no need of settlement"). The parties simply only present sufficient information to lend to whether the settlement falls within "the reasonable range of litigation possibilities" although this is not a burden of proof for the underlying claim. *Key3Media*, 336 B.R. at 93.

At the hearing held on November 8, 2022, to address the Joint Motion for Approval of Settlement, Botti's counsel emphasized why entering the settlement was in the best interest of Botti and why she would agree to such settlement. *See* Transcript regarding Hearing Held 11/8/2022 (Doc. No. 156) at 4-8 ("Transcript"). Botti was in attendance at the hearing.[7] The benefits were comprehensively explained on the record, specifically the resolution of possible costly litigation. *Id*. at 12-13. The Court held that the parties had met their burden under the *Martin* factors and approved the settlement. *Id*. at 14-15.[8]

---

involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996).

[7] Illustrating that she was comfortable speaking up during the hearing, Botti corrected her counsel at one point during the hearing on a factual matter, yet she never broached any disagreement or unhappiness with the settlement. *See* Transcript at 8.

[8] At the same hearing, Botti urged that her case be dismissed. *See* Transcript at 9. Moreover, if the Chapter 13 case was reopened and the Order dismissing her case was vacated, Botti does not elaborate as to whether she would continue with her Chapter 13 Plan or what her intention is exactly.

In her Motion, Botti asserts that complete bank records for Gemini Beverage were not produced by Lampus before she entered into the settlement and that her counsel advised her those records could not be produced. *See* Motion at ¶19. She has since obtained copies of checks and allegedly obtained the complete bank record. *Id*. at ¶21; *see also* Exhibit A of Motion. However, she admittedly knew of the existence of these records and chose to proceed to settlement without them as opposed to pushing for production through a motion to compel.[9] Another exhibit demonstrates that Botti and her counsel were aware of potential issues regarding the financial condition of Gemini Beverage prior to the time of the settlement being approved.[10] Further, as indicated above, in assessing the factors for approving a settlement, the Court is not presented with evidence to resolve the parties' dispute. Countering any likelihood of success on the underlying relief sought, it is not newly discovered evidence to be considered under Rule 60(b)(2) nor is there any evident fraud or misconduct by Lampus under Rule 60(b)(3).

Next, Botti discusses a confession of judgment in state court which was filed before she agreed to settlement and for which her motion to strike was granted late last year.[11] *See* Motion at ¶24-25. The premise, according to Botti, of the motion to strike was improper service. *Id*. However, regardless of what steps Botti has taken after-the-fact, the risks of the litigation, particularly the chance of Botti's success, were specifically assessed in the context of the settlement as addressed

---

[9] Parties may choose to settle prior to lengthy discovery to save costs, and the Court will not draw conclusions from any alleged lack of documentation prior to the settlement where the parties agree to proceed in that way.

[10] In *Debtor's Supplemental Exhibits in Support of Motion to Reopen Case* (Doc. No. 159), Botti includes as the Exhibit A to this document, an email dated May 23, 2022, from her CPA to her counsel identifying potential financial issues and making recommendations. This email further demonstrates that Botti was aware that there were potential issues regarding the financial condition of Gemini Beverage prior to her agreeing to the settlement. This email also directly refutes the allegations in the Motion at ¶¶21 and 22 as the CPA directly questioned the use of company funds for legal expenses *prior to the approval of the settlement*.

[11] Exhibit B of the Motion presumably shows two separate screenshots of state court dockets with case numbers of GD-21-005345 (Lampus Jr. v. Botti et al) and GD-21-005788 (SSB Bank v. Botti). It appears from the docket entries at GD-21-005788 that a Confession of Judgment was entered on May 24, 2021, in favor of SSB Bank which was subsequently stricken on November 21, 2025. It does not appear that Lampus is identified as a party to that action. Additionally, it appears that the docket entries at GD-21-005345 represent the state court litigation between Lampus, Botti, and Gemini Beverage.

on the record with the intent of a desired global resolution. *See* Transcript at 6. It was represented to the Court by counsel at the Settlement Hearing that "there may be some potential litigation on the issue of the guaranty with SSB," and that the settlement intended that "[the] Judgment from SSB [goes] away." *Id.* at 6-7. The litigation with SSB was known at the time of the settlement, assessed at the time of settlement, and referenced within the settlement. No attempt is made to demonstrate how action taken on the state court docket years after settlement constitutes newly discovered evidence under Rule 60(b)(2) or fraud by Lampus under Rule 60(b)(3) that would support the likelihood of success in vacating approval of the settlement.[12]

Botti also argues that she was pressured into settlement based on the alleged existence of affidavits accusing her of misconduct even though said affidavits were never produced. With respect to the "affidavits," Exhibit C indicates that she knew in December 2022 that affidavits or testimony could be obtained if needed, not that affidavits already existed. *See* Motion at ¶¶26-28. Regardless, to the extent she contends she was pressured into settlement on this ground, she nonetheless proceeded to enter into the settlement without first obtaining the alleged affidavits. She chose to proceed without them. No attempt is made to demonstrate how the failure to produce affidavits constitutes newly discovered evidence under Rule 60(b)(2) or fraud by Lampus under Rule 60(b)(3) that would justify vacating approval of the settlement. These affidavits simply do not provide any basis to aid in the likelihood of success in the underlying relief sought.

As an additional argument, Botti also states that she discovered that a notary who notarized "a document" lost her licensure as a notary. *See id.* at ¶¶29-30. According to Botti, the document was "used against her." *Id.* at ¶29. Within the Motion, Botti fails to identify the document, its

---

[12] Further, the striking of the confession of judgment due to improper service does not necessarily speak to the ultimate question of liability on the debt. To the extent Botti had some valid defense at the time of the settlement that would have impacted the negotiations, Botti nonetheless chose to proceed to settlement.

purported significance, and how the issue with the notarization would invalidate the document.[13] Exhibit D to the Motion is a notification from the Commonwealth of Pennsylvania dated May 19, 2025, advising of the surrender of the notary commission. No attempt is made to demonstrate how this constitutes newly discovered evidence under Rule 60(b)(2) or fraud by Lampus under Rule 60(b)(3) that would rationalize vacating approval of the settlement. In result, the revocation of a notary's licensure does not provide any basis for success in the underlying relief sought.

In her Supplemental Exhibits, Botti also asserts that her counsel misrepresented at the settlement hearing that she would be relying on family contributions to make payments under the settlement. *See* Supplemental Exhibits at 2 (Doc. No. 159). As Botti was present at the hearing, she could have corrected her counsel, as she later did during the hearing. *See* Transcript at 8. Most significantly, it is not clear how this would undermine the validity of the settlement or how this would provide any justification in the underlying relief sought. When challenging the Orders on the basis of Rule 60(b)(2) or (3), even in absence of the time constraint of Rule 60(c), it is clear from the outset that Botti does not have a successful chance of seeking relief from the Orders.

On to consideration of challenging the Orders under Rule 60(b)(6), Botti simply does not meet the heavy burden. The Court may relieve a party from a final order for "any other reason that justifies relief" under Rule 60(b)(6). Relief in this manner is only appropriate in "extraordinary circumstances where, without such relief, an extreme and unexpected hardship would occur." *See In re Butko*, 624 B.R. 338, 371-72 (Bankr.W.D.Pa. 2021) (citing *Sawka v. Healtheast, Inc.*, 989 F.2d 138, 140 (3d Cir. 1993)). Moreover, the Third Circuit has explained that "extraordinary circumstances rarely exist when a party seeks relief from a judgment that resulted from the party's

---

[13] It appears within the exhibits submitted prior to the evidentiary hearing that the document identified is an agreement between Lampus and Botti. However, the exhibit was not presented at the evidentiary hearing, and the Court is unaware of any challenge other than the subsequent loss of the notary license. Further, it was never clarified on the record in a way for opposing counsel to respond to it.

deliberate choices." *Budget Blinds, Inc. v. White*, 536 F.3d 244, 255 (3d Cir. 2008).[14] Here, Botti chose to enter into the settlement, and she requested that her case be dismissed. She is seeking relief from both Orders of which she deliberately chose to pursue. Unfortunately, her buyer's remorse does not amount to the extraordinary circumstances envisioned by Rule 60(b)(6).

Furthermore, as discussed above, a motion under Rule 60(b)(6) must be brought within a reasonable time. *See* Fed.R.Civ.P. 60(c). "The reasonableness of the delay is assessed on a case-by-case basis…informed by many factors, including 'finality, the reason for delay, the practical ability for the litigant to learn of the grounds relied upon earlier, and potential prejudice to other parties.'" *Butko*, 624 B.R. at 372.[15] In this case, Botti's Motion is not timely when she has waited over two years to bring her Motion. Although the Court sympathizes with Botti's allegations of physical and mental health conditions as reason for her delay, many of the issues raised by Botti were within her knowledge at the time of the settlement. Therefore, her delay is not justified. She knew the Gemini Beverage bank records had not been produced, the affidavits were not produced, and her CPA recommended to investigate the finances of Gemini Beverage, yet she chose to agree to the settlement. Every other piece of information is irrelevant. Moreover, prejudice exists to Lampus who is now incurring additional litigation costs to rehash issues resolved by the settlement, which was entered into willingly, on advice of counsel, and then approved by the Court. On this record, Botti's Motion was not brought within a reasonable time. Therefore, challenging the Orders under Rule 60(b)(6) would be a pointless exercise and consequently futile, and thus, under the fifth *Roberts* factor, the Motion should not be granted.

---

[14] *See also Coltec Industries, Inc. v. Hobgood*, 280 F.3d 262, 274 (3d Cir. 2002) (emphasizing that "courts have not looked favorably on the entreaties of parties trying to escape the consequences of their own 'counseled and knowledgeable' decisions").

[15] In *Butko*, the Court held that a debtor's motion brought under Rule 60(b)(6) was untimely when the debtor failed to appeal the order, litigated in state court for two years, and returned to the bankruptcy court to "rehash the same issues anew." *Butko*, 624 B.R. at 372.

For all of the above reasons, the Motion must be denied. In this case, it is clear from the outset that the underlying relief sought by Botti cannot be achieved. An appropriate Order will be entered consistent with this Memorandum Opinion.

Date: <u>July 20, 2026</u>                                   <u>  /s/ Carlota M. Böhm  </u>
                                                Carlota M. Böhm
                                                United States Bankruptcy Judge

                                                SIGNED
                                                7/20/26 1:24 pm
                                                CLERK
<u>Copy mailed to:</u>                              U.S. BANKRUPTCY
Angelica Sue Botti                              COURT - WDPA
132 Harrison Avenue
Robinson, PA 15949

11